UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DESERAY B.[1], | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-01019-DLP-RLY ) |
| ANDREW M. SAUL, Commissioner, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## ORDER

Plaintiff Deseray B. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Social Security Disability Insurance ("DIB") under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 301, 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

### I. BACKGROUND

**A. Procedural History**

On October 15, 2014, Deseray filed for DIB under Title II of the Act and for SSI under Title XVI of the Act, alleging her disability began on December 31, 2013.

---

[1] The Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

[Dkt. 8-6 at 66 (R. 100.] The claim was denied initially on April 23, 2015, and upon reconsideration on October 14, 2015. [Dkt. 8-4 at 8, 13 (R. 123, 128).] The Plaintiff then filed a written request for a hearing on November 24, 2015, which was granted. [Dkt. 8-3 at 66 (R. 100).]

On April 25, 2017, Administrative Law Judge Luke Woltering (the "ALJ") conducted the hearing, where Deseray and a vocational expert testified. [*Id.*] On July 27, 2017, the ALJ issued an unfavorable decision finding that the Plaintiff was not disabled as defined in the Act. [*Id.*] The Appeals Council denied Deseray's request for review of this decision on February 6, 2018, making the ALJ's decision final. [Dkt. 8-2 at 2 (R. 1).] The Plaintiff now seeks judicial review of the Commissioner's decision. *See* 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c).

### B. Factual Background

Deseray was born on November 27, 1974, and was 39 years old at the time of the alleged onset date in 2013. [Dkt. 8-5 at 2 (R. 192).] She received her General Education Development ("GED") diploma in 2002. [*Id.*]. She has past relevant work history as a fast food worker, hair stylist, home care worker, [Dkt. 8-6 at 4 (R. 221)], and street cleaner. [Dkt. 8-3 at 75 (R. 109).]

## II. STANDARD OF REVIEW

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520. The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her age, education, job experience and residual functional

capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Plaintiff is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

In this substantial-evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d at 872.

### III. ALJ'S SEQUENTIAL FINDINGS

In determining whether Deseray qualified for disability benefits under the Act, the ALJ went through the five-step analysis required by 20 C.F.R. § 404.1520(a). The ALJ first determined that the Plaintiff met the insured status requirements of the Act through December 31, 2018 and has not engaged in substantial gainful activity since her alleged onset date of December 31, 2013. [Dkt. 8-3 at 68 (R. 102).]

At step two, the ALJ found Plaintiff's severe impairments to include "obesity; bilateral knee osteoarthritis; peripheral neuropathy; hypertension; cervical degenerative disc disease; and asthma," along with the non-severe impairments of "sickle cell disease; Sjoren's [sic] Syndrome; supraventricular tachycardia; palpitations; and testimony of severe skin issues with right leg." [Dkt. 8-3 at 69 (R. 103).] The ALJ also found the Plaintiff's adjustment disorder to be non-severe. [*Id.*]

As noted above, the third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listings include medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals a Listing.[2]

At the fourth step of the five-step sequential evaluation process, the ALJ weighed the medical evidence, the vocational expert's testimony, and Deseray's testimony and work history, and determined that the Plaintiff had the RFC to perform a range of sedentary work, except with the limitations that she:

- Can occasionally use foot controls with the bilateral lower extremities;
- Cannot climb ladders, ropes or scaffolds;
- Can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl;
- Cannot work around hazards, such as unprotected heights and exposed moving mechanical parts;

---

[2] The ALJ specifically considered Listing 1.02 for major joint dysfunction, Listing 1.04 for disorders of the spine, Listing 3.03 for asthma, Listing 4.03 for hypertensive cardiovascular disease, Listing 11.14 for peripheral neuropathy, and Listing 12.04 for depressive, bipolar, and related disorders, along with Social Security Ruling 02-1p for obesity. [Dkt. 8-3 at 70 (R. at 104).]

6

- Cannot tolerate concentrated exposure to extreme cold or extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants; and
- Would need to elevate one or both of the lower extremities 8 to 12 inches throughout the workday.

[Dkt. 8-3 at 70 (R. 104.] Based on her RFC, the ALJ determined that Deseray could not perform any of her past relevant work. [Dkt. 8-3 at 75 (R. 109).] Given the Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, the ALJ determined that the Plaintiff was able to perform work that existed in significant numbers in the national economy, including that of a final assembler, visual inspector, and sorter. [Dkt. 8-3 at 76 (R. 110).] Based on these findings, the ALJ concluded that Deseray is not disabled under the Act. [*Id.*]

## IV. DISCUSSION

Deseray argues generally that substantial evidence fails to support the ALJ's determination that she was not disabled, but focuses on two[3] main contentions: 1) that the ALJ erred by failing to address Listing 8.05 in his written decision and 2) that the ALJ erred by improperly weighing the opinion of her treating provider and by not including that provider's assessed limitations in his RFC findings.

### A. Listing 8.05

Plaintiff first argues that the ALJ erred by not addressing Listing 8.05, for dermatitis, in the written decision. [Dkt. 14 at 11.] Plaintiff asserts that the

---

[3] Plaintiff's brief cites three arguments, but her second and third arguments are largely similar and will be discussed jointly here.

7

evidence of record demonstrated that the severity of the listing was either met or medically equaled; specifically, she argues that "leg swelling, coupled with her knee problems, creates an inability to ambulate." [Dkt. 14 at 12.]

To prove presumptive disability by meeting the severity of a listed impairment, a claimant must establish, with objective medical evidence, all the criteria specified in the listing. *See* 20 C.F.R. § 404.1525; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Rice*, 384 F.3d at 369 ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of" benefits at step three). In the alternative, a claimant can establish "medical equivalence" in the absence of one or more of the findings if they have other findings related to the impairment or have a combination of impairments that "are at least of equal medical significance." *See* 20 C.F.R. § 404.1526(a)-(b).

Listing 8.05 "Dermatitis" requires the presence of a skin condition "(for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 8.05. The severity of skin disorders is based on the extent of the individual's skin lesions, the frequency of flare-ups, symptoms, and treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 8.00(C). Additionally, the preamble to the listing describes how the necessary severity is medically demonstrated:

> Extensive skin lesions. Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation.

8

Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:

a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 8.00(C)(1).

Deseray argues that her skin condition satisfies the severity requirements of Listing 8.05 because it "seriously limit[ed her] ability to ambulate." [Dkt. 14 at 12.] The Plaintiff is correct that the ALJ did not specifically address the Listing by name, noting rather that he "considered section 1.02, 1.04, 3.03, 4.03, 11.14 and 12.04, along with obesity SSR 02-1p." [Dkt. 8-3 at 70 (R. 104).] This omission is notable considering that Plaintiff cited several pieces of evidence showing she suffered from a form of dermatitis that caused skin ulcers, which could possibly satisfy the diagnostic criteria of the listing. [Dkt. 14 at 11.] What the Plaintiff does not cite, in her opening or reply brief, however, is any evidence of record to demonstrate that her medical condition was severe enough that her impairments "very seriously limit[ed her] ability to ambulate." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 8.00(C)(1(a)-(c).

The ALJ concluded in his opinion that there "is no evidence of an inability to ambulate effectively for 12 months or longer." [Dkt. 8-3 at 70 (R. 104).] Moreover, the ALJ explained that the Plaintiff had made inconsistent statements throughout

9

the record regarding her ability to ambulate. In a functional report, requested by the SSA and dated December 8, 2014, which asked her how far she could walk, she indicated "not a block" before needing to rest for forty minutes. [Dkt. 8-6 at 19 (R. 236).] On April 22, 2015, she reported to her treating provider that she was "walking and exercising a lot" and "walking more, 6 blocks/day, but continues to have knee pain." [Dkt. 8-13 at 25 (R. 731).] On September 15, 2015, she again told her provider that she was "still walking 6 block/day to bring children to school." [Dkt. 8-15 at 24 (R. 823).]

The ALJ need not address every piece of evidence, so long as the Court is able to trace his logic from the evidence to his conclusions. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). To establish error at step three, the Plaintiff must identify evidence that was ignored or misstated which established all the requirements of the listing or otherwise demonstrated equivalent severity. *Id.* at 429-31. Neither the Plaintiff nor her medical providers have presented to this Court any evidence of record that the severity of her skin disorder seriously limited her ability to ambulate. Based on this lack of information and the Plaintiff's inconsistent statements throughout the record, the Court does not find any basis to disturb the ALJ's step three findings.

**B. Treating Medical Provider Opinion**

Plaintiff next argues that the ALJ erred by only giving some weight to the RFC assessment of certified physician assistant Sarah Alajajian ("Ms. Alajajian")

10

and by not including Ms. Alajajian's assessed limitations in his RFC findings[4]. The Plaintiff argues that it was clear error for the ALJ to discount the opinion of the only treating medical provider and give more weight to the state agency consultants who were not provided with the entirety of the Plaintiff's medical history when they conducted a record review. [Dkt. 14 at 12-13.] The Commissioner argues that the ALJ provided a reasoned basis for giving only some weight to the opinion of Ms. Alajajian, which included noting that Ms. Alajajian's opinion was not well-supported by medical findings and "went beyond what the record supports." [Dkt. 18 at 10.]

When making a disability determination, an ALJ utilizes all evidence in the case record. "This includes, but is not limited to, objective medical evidence; other evidence from medical sources, including their opinions; statements by the individual and others about the impairment and how it affects the individual's functioning; [and] information from other 'non-medical sources….'"[5] Social Security Ruling 06-03p[6] draws a clear distinction between "acceptable medical sources" and other health care providers because only "acceptable medical sources" can establish the existence of a medically determinable impairment, give medical opinions, or be considered treating sources. SSR 06-03p. Physician assistants, such as Ms. Alajajian, are considered "other medical sources," whose medical opinion may be

---

[4] The Plaintiff separates these two points into two distinct arguments, but the Court finds that they are more appropriately discussed together because they center on the same issue of whether the ALJ properly weighed the opinion of Ms. Alajajian.
[5] The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources." SSR 06-03p.
[6] This Social Security Ruling was rescinded but is still applicable to all claims filed prior to March 27, 2017.

used to provide "insight into the severity of the individual's impairment(s) and . . . [to demonstrate how the impairment] affects the individual's ability to function." SSR 06-03p; § 404.1527(d)(2); *Phillips v. Astrue*, 413 F. App'x. 878, 884 (7th Cir. 2010).

When evaluating opinions from medical sources who are not "acceptable medical sources," the "weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors…" including: "(1) How long the source has known and how frequently the source has seen the individual; (2) How consistent the opinion is with other evidence; (3) The degree to which the source presents relevant evidence to support an opinion; (4) How well the source explains the opinion; (5) Whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) Any other factors that tend to support or refute the opinion." SSR 06-03p.

The ALJ gave some weight to the opinion of Ms. Alajajian, stating that he agreed with her mental assessment because it was supported by the record, but that he thought her physical assessment went beyond what the record supported. [Dkt. 8-3 at 74 (R. 108).] The ALJ determined that the Plaintiff's treatment notes indicated that she was treated conservatively, with her course of care never progressing beyond medication management, physical therapy, steroid injections, leg elevation, compression hose, and weight loss for pain control. Moreover, the Plaintiff did not undergo surgical intervention and her most recent treatment notes

suggested that her treatment was limited to rehabilitation exercises to promote weight loss and medication for pain control. Perhaps most tellingly, the ALJ included some of Ms. Alajajian's recommendations in his RFC, insofar as he allowed for leg elevation throughout the workday to address the Plaintiff's complaints of lower extremity swelling and pain. Furthermore, certain limitations that were assessed by Ms. Alajajian do not appear credible. For example, Ms. Alajajian opined that the Plaintiff could walk only half a block and stand or walk for ten minutes at a time. [Dkt. 8-13 at 61 (R. 767).] As explained above, these limitations do not appear consistent with the daily activities that the Plaintiff reported to Ms. Alajajian.

Although the ALJ did not explicitly discuss each of the factors contemplated in SSR 06-03p and § 404.1527, the ALJ did discuss the nature of Ms. Alajajian's treating relationship and the consistency of her opinion with the other record evidence. The ALJ, therefore, reasonably considered and evaluated the opinion of Physician Assistant Alajajian by citing inconsistencies between the opinion and record evidence.

**C. Leg Elevation[7]**

The Plaintiff argues that the ALJ's RFC assessment was improper because it noted that she would need to elevate one or both legs up to 8 to 12 inches throughout the workday. [Dkt. 8-3 at 70 (R. 104).] Plaintiff contends that this

---

[7] Imbedded within the Plaintiff's second argument regarding the weighing of Ms. Alajajian's medical opinion is a separate argument that the ALJ improperly assigned the height at which the Plaintiff needs to elevate her legs. That argument warrants discussion and will be evaluated separately.

13

height limitation for leg elevation was arbitrarily assigned, without considering the Plaintiff's testimony or the medical evidence. [Dkt. 14 at 17.] The Commissioner responds by asserting that the ALJ did not "play doctor," but instead clearly explained that "the limitation regarding leg elevation stemmed from PA Alajajian's recommendation that Plaintiff elevate her legs." [Dkt. 18 at 14.]

The ALJ, in outlining his RFC assessment, explained that "the residual functional capacity addresses the claimant's complaints of lower extremity swelling/pain and the need to elevate her legs by allowing for elevating one or both of the lower extremities 8 to 12 inches throughout the workday." [Dkt. 8-3 at 75 (R. 109).] There is no evidence from any source, medical or layperson, that supports limiting the Plaintiff to elevating her legs only up to 12 inches. At the hearing, Plaintiff testified that "[i]f I elevate my legs I have to put them -- elevate them above my waist, and I have to do it like four hours in a day to keep them from swelling." [Dkt. 8-2 at 20 (R. 19).] Moreover, although the ALJ claims that Ms. Alajajian's opinion supported his decision, a review of the treatment record reveals that she never offered an opinion regarding the height at which Plaintiff would need to elevate her legs, noting instead that she recommended "leg elevation." [Dkt. 8-15 at 26 (R. 825).] In fact, no medical source provided an opinion as to the height Plaintiff would need to elevate her legs.

In this case, the only reference to a leg elevation height of 8 to 12 inches comes from the vocational expert ("VE"). The VE was asked during the hearing how the Plaintiff's testimony that she needed to elevate her legs above her waist would

affect employment, and she testified that it "would eliminate work at the competitive level. There would be no opportunity to elevate an extremity at above waist level." [Dkt. 8-2 at 34 (R. 33).] In a follow-up question, the ALJ asked whether "there [would be] any allowance for elevation of the legs?" [Dkt. 8-2 at 35 (R. 34).] The VE testified, "Yes. Typically at the sedentary level a person would be able to elevate about eight to 12 inches and still be able to be on task and productive at the workstation." [Dkt. 8-2 at 35 (R. 34).] In a follow-up question, the ALJ confirmed that the three sedentary jobs the VE indicated the Plaintiff could perform (assembler, inspector, and sorter) also allowed for the precise leg elevation limitation of 8 to 12 inches. [Dkt. 8-2 at 35 (R. 34).]

At no point does the ALJ articulate why he does not credit the Plaintiff's testimony that she needed to elevate her legs above her waist or why he discounted Ms. Alajajian's medical assessment elsewhere but credited her recommendation for leg elevation. Because the only record evidence that lists a height at which the Plaintiff must elevate her legs comes from the Plaintiff's testimony, the ALJ was required to assess the credibility of the Plaintiff's testimony. In assessing a claimant's credibility, an ALJ must explain which of a claimant's symptoms are not credible and the extent to which they are not credible. *Martinez v. Astrue,* 630 F.3d 693, 696 (7th Cir. 2011). In *Martinez,* the Seventh Circuit reversed an ALJ's adverse credibility finding where there was "no explanation of which of [the claimant's] statements are not entirely credible or how credible or noncredible any of them are," rendering the ALJ's finding "suspended over air." *Id* at 696-97.

15

In the portion of his decision discussing leg elevation, the ALJ does not even mention the Plaintiff's testimony regarding the need to elevate her legs above waist level; at other parts of his decision, however, he notes that the Plaintiff's subjective complaints are not supported by the evidence in the record because there is a lack of corroborating objective medical evidence. No explanation is provided as to why or the extent to which the Plaintiff's testimony about leg elevation is not credible, an undertaking which is required in this Circuit. Instead, the Court is left to guess the extent to which the Plaintiff's testimony is not credible. As noted above, although an ALJ is not required "to address in writing every piece of evidence or testimony presented, he was required to provide 'an accurate and logical bridge' between the evidence and his conclusions." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008)). It is impossible, at this time, for the Court to assess whether the ALJ properly determined the Plaintiff's credibility, because there is no bridge between the evidence in the record and the ALJ's conclusion.

Thus, the ALJ's assessment that the Plaintiff can elevate her legs to a height of 8 to 12 inches is supported by neither the medical nor non-medical evidence in the record and is not adequately explained in the ALJ's opinion. Several courts in the Seventh Circuit have remanded cases in which the ALJ arbitrarily assigned a height for leg elevation that was not based on medical records or testimony, and was not supported by substantial evidence. *Chase v. Astrue*, 458 F. App'x 553 (7th Cir. 2012); *Ellis v. Astrue*, No. 2:09 CV 145, 2010 WL 3782265 (N.D. Ind. Sept. 20,

16

2010); *Ellis v. Astrue*, No. 2:09 CV 145, 2011 WL 690218 (N.D. Ind. Feb. 16, 2011); *McKinnie v. Astrue*, No. 09 C 0614, 2010 WL 1257776 (N.D. Ill. Mar. 26, 2010); *Voight v. Astrue*, No. 10 C 7847, 2011 WL 6156841 (N.D. Ill. Dec. 12, 2011); *Tina T. v. Berryhill*, No. 17 C 50282, 2019 WL 354978 (N.D. Ill. Jan. 29, 2019); *Sherry P. v. Berryhill,* No. 17 CV 50372, 2019 WL 1584560 (N.D. Ill. Apr. 12, 2019).

The determination of the height at which the Plaintiff must elevate her legs to experience pain relief is critical to analyzing whether Plaintiff may retain gainful employment, because if the ALJ credits the Plaintiff's testimony that she needs to elevate her legs at waist level, the VE concluded that she would be precluded from any employment opportunities. On remand, the ALJ should both evaluate the medical evidence and assess the credibility of the Plaintiff's testimony regarding leg elevation height and, if he finds that Plaintiff's leg elevation limitation is not supported by the record, he must explain how he arrived at that conclusion.

## V. Conclusion

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) as detailed above. Final judgment will issue accordingly.

So ORDERED.

Date: 6/26/2019

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record.